UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X    Case No.
LAFANIA MURCHISON,

                                    Plaintiff,                **COMPLAINT**

                    - against -

THE HELP USA FUND, INC. and ANDREA HARRIS,    **PLAINTIFF DEMANDS**
*Individually*,                                                          **A TRIAL BY JURY**

                                  Defendants.
------------------------------------------------------------------------X

       Plaintiff, LAFANIA MURCHISON, by her attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to <u>Title VII of the Civil Rights Act of 1964</u>, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII") and the <u>New York City Human Rights Law</u>, New York City Administrative Code § 8-502(a), *et. seq.,* and seeks damages to redress the injuries Plaintiff has suffered as a result of being **discriminated** and **retaliated against**, by her employer solely due to her **pregnancy.**

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343.

3. The Court has supplemental jurisdiction over the claims of Plaintiff brought under city law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) as Defendants reside within the Southern District of New York and the acts complained of occurred therein.

**PROCEDURAL PREREQUISITES**

5. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC").

6. Plaintiff received a Notice of Right to Sue from the EEOC, dated July 18, 2017, with respect to the herein charges of discrimination. A copy of the Notice is annexed hereto.

7. This Action is being commenced within 90 days of receipt of said Right to Sue.

**PARTIES**

8. That at all times relevant hereto, Plaintiff LAFANIA MURCHISON ("MURCHISON") is a resident of the State of New York and County of New York.

9. That at all times relevant hereto, Defendant THE HELP USA FUND, INC. ("HELP USA") was and is a domestic not for profit corporation duly existing pursuant to, and by virtue of, the laws of the State of Illinois. Defendant HELP USA has a principal place of business located at 5 Hanover Square, 17th Floor, New York, New York 10004.

10. That at all times relevant hereto, upon information and belief, Defendant HELP USA operated an office located at 1 Wards Island, New York, New York 10035.

11. That at all times relevant hereto, Plaintiff was an employee of Defendant HELP USA.

12. Upon information and belief, at all times material, Defendant ANDREA HARRIS ("HARRIS") was and is an individual residing in the State of New York.

13. That at all times relevant hereto, Defendant HARRIS was an employee of Defendant HELP USA, holding the position of "Executive Director".

14. That at all times relevant hereto, Defendant HARRIS was Plaintiff's supervisor and/or had supervisory authority over Plaintiff. Defendant HARRIS had the authority to hire, terminate and affect the terms and conditions of Plaintiff's employment or to otherwise influence the decision maker of same.

15. Defendants HELP USA and HARRIS are collectively referred to herein as "Defendants."

## MATERIAL FACTS

16. On or about March 28, 2016, Plaintiff commenced employment with Defendant HELP USA, holding the position of Director of Social Services at Defendant HELP USA's Ward's Island location.

17. Plaintiff earned approximately $55,000 annually, plus an additional $2,000 per month for work at the Davidson site. The Davidson site is the annex, and in order for clients to be allowed temporary residency at Davidson, they must be admitted into the Ward's Island.

18. Plaintiff performed well throughout her first month of employment, and did not earn a single write up regarding her performance on the job.

19. On or around April 29, 2016, Plaintiff met with Defendant HARRIS and Antonia Wosu, the Vice President of Defendant HELP USA. In this routine status meeting, Plaintiff informed them of her pregnancy, particularly as she had just learned that it was considered high risk, and would involve additional medical observation and testing.

20. Ms. Wosu was excited, immediately congratulating Plaintiff, and she assured her that Defendants would work with her. Defendant HARRIS, however, rolled her eyes at Plaintiff and remained quiet. She then informed Plaintiff that she would have to complete a daily tracker to help Defendant HARRIS learn Plaintiff's training needs. Daily trackers, however, were only used for subordinate staff members, not upper management, and

typically only utilized when an employee had already been cited for low performance.

21. Startled, Plaintiff informed Defendant HARRIS and Ms. Wosu that she did not meet the requirements for daily tracking, and Defendants did not force her to participate in the program at that time due to her protests.

22. Unfortunately, this was only the beginning of Defendants' discriminatory and hostile behavior towards Plaintiff due solely to her newly announced pregnancy.

23. On or around May 2, 2016, Defendant HARRIS called Plaintiff into her office. Defendant HARRIS informed Plaintiff that she was "not sure if you knew you were pregnant when you started here, but, had I known this during the interviewing process, I would have made a different hiring decision." Appalled, Plaintiff could not respond, and Defendant HARRIS continued, saying that she "did not like to be fooled, but now I need to make a decision as to whether or not I want to keep someone like this," while pointing at Plaintiff's stomach, "on my staff."

24. Horrified, Plaintiff left the meeting quickly, and immediately felt sick to her stomach from the stress of the hostile encounter. Despite this, Plaintiff remained at work and completed her shift in its entirety.

25. The very next day, however, on or around May 3, 3016, Plaintiff suffered breathing complications and dizziness, in addition to a low-grade fever. Plaintiff's doctor advised her to remain home to monitor her conditions, and Plaintiff complied, informing Defendant HARRIS of her condition via email.

26. On or around May 4, 2016, Plaintiff contacted Defendant HARRIS to remind her of a previously scheduled doctor's appointment, and confirmed her hours for the next day.

27. On or around May 5, 2016, Plaintiff started work at 1:19pm and departed at 9:19pm.

28. That day, however, Defendant HARRIS ordered Plaintiff to submit documentation of her medical appointment to Raymond Farrell, the Business Manager. Defendant HARRIS informed Plaintiff that her employment was in jeopardy due to her pregnancy, and that she must "reconsider your employment here at HELP SEC due to your situation," referring to Plaintiff's pregnancy. Defendant HARRIS elaborated, saying that she did not know what her decision would be "in terms of keeping you here because you will have too many pregnancy related medical appointments."

29. Defendant HARRIS further admitted that she knew that she could not fire Plaintiff for her pregnancy, so she would "take other routes" in order to get rid of her. Plaintiff immediately protested, informing Defendant HARRIS that her actions were clearly discriminatory. Defendant HARRIS replied by informing Plaintiff that she would have never hired her if she had known of Plaintiff's pregnancy in the hiring process.

30. Less than one hour later, while Plaintiff met with her Assistant Director, Defendant HARRIS abruptly pulled her out of the meeting to see Ms. Wosu. Defendant HARRIS' demonstrated urgency led Plaintiff to believe it was an emergency. In fact, Ms. Wosu simply asked how Plaintiff was feeling, and required the medical documents for her last appointment.

31. Defendant HARRIS, however, considered the meeting and opportunity to further harass Plaintiff about her condition. Defendant HARRIS said that Plaintiff's condition "poses a problem because work must get done," and when Plaintiff went to medical appointments, her work "falls on other staff or just does not get done." Defendant HARRIS further warned that she did not feel she could accommodate Plaintiff's medical appointments. Ms. Wosu quickly interrupted, and simply asked Plaintiff for advanced notice for her medical

appointments.

32. Unwilling to be pushed around, Plaintiff explained to Defendant HARRIS that her appointments do not make her unable to perform her job responsibilities. She further highlighted the fact that her usual appointments did not directly conflict with her shift hours.

33. On or around May 6, 2016, Defendant HARRIS called Plaintiff into her office to aggressively reprimand her for challenging her. Defendant HARRIS snapped at Plaintiff that she did not listen to Defendant while she was speaking, and that Plaintiff's conduct was inappropriate. Plaintiff asked for an example, and the only one Defendant HARRIS could provide was the meeting the previous day. Plaintiff explained that she was allowed to defend herself when her employer challenged her fitness for a position due to her pregnancy.

34. On or around May 9, 2016, Defendant HARRIS barged into Plaintiff's office and declared that she was not following directives regarding daily tracking. Defendant HARRIS ordered Plaintiff to submit a tracker for that day, and that she was required to submit them indefinitely as there were "too many times I could not find" Plaintiff.

35. Plaintiff attempted to explain that her pregnancy led her to use the restroom frequently during the day, but Defendant HARRIS dismissed this outright. Plaintiff also inquired into the status of the refrigerator that should have been in her office, as every other director-level employee received that benefit. Even directors who started employment after Plaintiff had received their refrigerators. Defendant HARRIS brushed off this inquiry.

36. According to Defendant HARRIS, Plaintiff needed to report, in addition to her daily tracking, when she: 1) clocked in; 2) left her desk for any reason, even if it was to visit the

printer, scanner, fax, or copy machine; 3) departed the office; or 4) departed the building, particularly as Plaintiff was now required to remain in the office until Defendant HARRIS left. This forced Plaintiff to register each and every bathroom break. When questioned, Defendant HARRIS claimed that Plaintiff did not respond to emails, which was a blatant lie. In fact, Defendant HARRIS imposed such micromanaging that she required Plaintiff to affirmatively respond to emails that did not typically warrant a formal response, forcing additional and unnecessary tasks into Plaintiff's already busy schedule.

37. Upon information and belief, no other directors were subjected to this level of micromanagement and tracking. When Plaintiff asked Defendant HARRIS if this level of harsh scrutiny was due to her pregnancy, Defendant HARRIS replied in the affirmative.

38. On or around May 10, 2016, Defendant HARRIS inappropriately interrupted Plaintiff's meeting with a supervisee, Angela Dkacha. Defendant HARRIS informed Plaintiff that it would be quick, and pulled her into her office. Defendant HARRIS said that she wanted to rebuild their business relationship, and would finally provide all necessary training required for Plaintiff to fully perform her job responsibilities. With a cursory apology for her behavior, Defendant HARRIS then stated that she had already performed Plaintiff's 30-day evaluation, despite new employees not typically receiving a 30-day evaluation as the first month was considered a training period.

39. Unsurprisingly, Defendant HARRIS gave Plaintiff a poor evaluation, which marked her for one pregnancy-related absence. Defendant HARRIS noted multiple incidents of tardiness that were fabricated. Plaintiff insisted that she would not miss any of her doctor's appointments due to the high risk nature of her pregnancy, to which Defendant HARRIS responded by launching into an offensive tirade against Plaintiff's clothing. While Plaintiff

was wearing maternity business attire, it did not suit Defendant HARRIS' tastes, and Plaintiff received a warning for not wearing non-maternity business attire.

40. In the same meeting, Plaintiff inquired into the status of the refrigerator for her office, stating that it was difficult to transport her pregnancy medication in ice all day to keep it cool. Defendant HARRIS told Plaintiff to put her "va-jay-jay meds" in a coworker's refrigerator since all other directors have refrigerators.

41. That same afternoon, Defendant HARRIS informed Plaintiff that another employee applied for Plaintiff's position as Director initially. Defendant HARRIS explained that she did not promote Ms. Webb due to her inexperience, but now that Plaintiff was pregnant, she wanted Ms. Webb in Plaintiff's position because Ms. Webb did not have extra medical appointments. Plaintiff was stunned, and once again informed Defendant HARRIS that such statements were discriminatory, and did not count as "supervision" for the purposes of a review.

42. On or around May 12, 2016, Plaintiff received a write up for attempting to leave work at 5pm without Defendant HARRIS' approval. This shift, however, lasted over eight hours, and Plaintiff did not receive overtime, thus entitling her to leave at 5pm. Defendant HARRIS rejected this logical explanation, and upheld the write up.

43. On or around May 13, 2016, Plaintiff received a write up for not performing dorm inspections. Plaintiff informed Defendant HARRIS that this was a task she had ordered her staff to perform, as was custom, but Defendant HARRIS insisted that Plaintiff personally perform the inspections. Plaintiff further explained that the physical requirements of an inspection that took nearly three hours to complete took a toll on her body. Defendant HARRIS replied "that's not my problem. I told you before to think about working here

while you're pregnant."

44. On or around May 16, 2016, Defendant HARRIS reminded Plaintiff that she must fill in for Defendant HARRIS while she was out of the office the next day.

45. On or around May 19, 2016, Plaintiff sent an email to Ms. Wosu with Defendant HARRIS copied, stating that she was continually discriminated against due to her pregnancy, and included several of Defendant HARRIS' statements. Ms. Wosu replied simply that she was "confused".

46. On or around May 23, 2016, Ms. Wosu had not yet followed up on Plaintiff's formal complaint of discrimination. Plaintiff then sent an email to Human Resources regarding the same, detailing Defendant HARRIS' abhorrent conduct, and stated that the elevated stress levels could induce a miscarriage if not addressed properly. Plaintiff also followed up over the phone with Sam Mahon, a Manager in Human Resources.

47. That same day, not long after the initial email and phone call to Ms. Mahon, Plaintiff received a write up for using her personal cell phone during work hours. The write up conveniently quoted Plaintiff's conversation to Ms. Mahon, indicating either that Defendant HARRIS was eavesdropping on the conversation, or that Ms. Mahon reported Plaintiff's complaint almost immediately following the conversation. Plaintiff contacted Ms. Mahon about the timeliness of the write up, and Ms. Mahon informed her that she had not spoken with Defendant HARRIS since the initial call.

48. Plaintiff also received a second write up later that day for being unprofessional for not providing MetroCards to clients.

49. On or around May 27, 2016, Plaintiff was written up for taking a lunch break, despite beginning her day at 9am.

50. Through this time, Defendant HARRIS also established a pattern of threatening to fire Plaintiff, claiming that she could not perform essential job functions due to her pregnancy. These discriminatory and hostile threats occurred repeatedly, including on or around May 5, May 9, May 18, May 20, May 23, May 27, May 30, and June 1, 2016.

51. On or around June 1, 2016, Plaintiff met with Azalia Matos, the Chief Administrative Officer, and Robert Lapene, the Human Resources Director, regarding her formal complaints of discrimination. Plaintiff also reported Defendant HARRIS' repeated threats to terminate Plaintiff solely due to her pregnancy. Ms. Matos simply informed Plaintiff that they were in receipt of the complaint.

52. On or around June 6, 2016, Defendant HARRIS refused to approve Plaintiff's hours for June 1, 2016. As such, Plaintiff was not paid for her hours on June 1, 2016.

53. On or around June 6, 2016, Plaintiff met again with Ms. Matos, Mr. Lapene, Ms. Wosu and Defendant HARRIS. Ms. Matos assured Plaintiff that she still had her job, and was not terminated, despite Defendant HARRIS' repeated threats. Ms. Matos, however, informed Plaintiff that Defendant HARRIS never knew that Plaintiff was pregnant, and thus it was impossible for her to discriminate against Plaintiff due to her pregnancy. Plaintiff was further informed that Defendant HARRIS did not trust Plaintiff and, as such, would not speak to Plaintiff until she regained her trust.

54. Plaintiff asked Defendant HARRIS why she could not trust her, but Ms. Matos intervened, suggesting that Plaintiff receive a walkie talkie with which to track her movements. Defendant HARRIS rejected this, and insisted on the daily tracking that no other director was required to endure.

55. In the same meeting, Ms. Matos also stated that Plaintiff was scheduled for several

upcoming trainings, which Defendant HARRIS should have registered her for prior to her complaints.

56. Dated the same day, Plaintiff received a letter from Ms. Matos stating that Plaintiff would <u>continue</u> to receive reasonable accommodation due to her pregnancy, despite Defendants' in person insistence that they had no knowledge of Plaintiff's pregnancy.

57. Unfortunately, Defendant HARRIS' discriminatory conduct continued, as she dodged Plaintiff's legitimate requests to approve her timesheet. In doing so, Plaintiff's timesheet was inaccurate, reflecting rejected punches in and out, and she was underpaid for that pay cycle. Plaintiff emailed Ms. Matos, but received no response.

58. On or around June 7, 2016, Plaintiff visited her doctor, who immediately put her on bed rest for extremely high stress levels and possibility of miscarriage with acute pain and uterine contractions.

59. On or around June 8, 2016, Plaintiff emailed Defendant HARRIS regarding her bed rest, but she never responded to Plaintiff. Instead, Plaintiff submitted her medical documentation on or around June 10, 2016.

60. As soon as Plaintiff went on bed rest to treat the extreme and detrimental stress caused by Defendants' discriminatory conduct, Defendants locked her out of the company email system, and blocked her from the ADP site to view her time sheets. When Plaintiff asked Mr. Farrell about this prohibition, he informed her that Defendant HARRIS ordered him to discontinue Plaintiff's access.

61. Concerned that the lockout indicated her termination, Plaintiff repeatedly emailed Defendant HARRIS from her personal email, and left voicemails with the office, frantically checking on the status of her employment. She never received a reply.

62. In the absence of a response from Defendant HARRIS, Plaintiff called Human Resources and left a message regarding her job status. She has yet to receive a response.

63. Plaintiff feels offended, disturbed, and humiliated by the blatantly unlawful and discriminatory termination.

64. **But for the fact that Plaintiff was pregnant, Defendants would not have treated her differently and would not have retaliated against her for the complaints of discrimination.**

65. Plaintiff's performance was, upon information and belief, above average during the course of her employment with Defendants.

66. Plaintiff has been unlawfully discriminated against, retaliated against, humiliated, and degraded, and as a result, suffers loss of rights, emotional distress, loss of income and earnings.

67. **Defendants' actions and conduct were intentional and intended to harm Plaintiff**.

68. The above are just some of the acts of discrimination and disparate treatment that Plaintiff experienced on a regular and continual basis since notifying Defendants that she was pregnant.

69. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further experienced severe emotional and physical distress.

70. As a result of the above, Plaintiff has been damaged in an amount in excess of the

jurisdiction of the Court.

71. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff demands punitive damages as against all Defendants, jointly and severally.

### AS A FIRST CAUSE OF ACTION
### FOR DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendant)

72. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

73. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., for relief based upon the unlawful employment practices of the above-named Defendant. Plaintiff complains of Defendant's violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's pregnancy and gender.

74. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq. by discriminating against Plaintiff because of her pregnancy.

### AS A SECOND CAUSE OF ACTION
### FOR DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendant)

75. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

76. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer:

"(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has

made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

77. Defendant engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e et seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendant.

### AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

78. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

79. The New York City Administrative Code §8-107(1) provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

80. Defendants engaged in an unlawful discriminatory practice in violation of the New York City Administrative Code §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of her pregnancy.

### AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

81. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

82. The New York City Administrative Code §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

83. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

### AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

84. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

85. The New York City Administrative Code §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

86. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(7) by discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

### AS A SIXTH CAUSE OF ACTION FOR DISCRIMINATION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

87. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

88. The New York City Administrative Code §8-107(19) interference with protected rights. It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in

the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

89. Defendants violated the section cited herein as set forth.

## JURY DEMAND

90. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et. seq.,* and the New York City Administrative Code, §8-107 *et. seq.*, in that Defendants discriminated against Plaintiff on the basis of her pregnancy and gender and retaliating against her for complaining of such discrimination;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination and retaliation and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: New York, New York
August 4, 2017

                                        **PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC**

By: _____
Marjorie Mesidor, Esq. (MM 1978)
Brittany Stevens, Esq. (BS 1637)
*Attorneys for Plaintiff*
45 Broadway, Suite 620
New York, New York 10006
(212) 248-7431
MMesidor@tpglaws.com
BStevens@tpglaws.com

EEOC Form 161-B (11/16)   U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To: Lafania Murchison
159-64 Harlem River Drive, Apt. 5 D
New York, NY 10039

From: New York District Office
33 Whitehall Street
5th Floor
New York, NY 10004

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

RECEIVED JUL 24 2017

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2017-00718 | Orfelino Genao, Investigator | (212) 336-3642 |

(See also the additional information enclosed with this form.)

NOTICE TO THE PERSON AGGRIEVED:
Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA): This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

Age Discrimination in Employment Act (ADEA): You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Kevin J. Berry, District Director   7-18-2017 (Date Mailed)

Enclosures(s)

cc: Attn
Director of Human Resources
THE HELP USA INC.
5 Hanover Square, 17th Floor
New York, NY 10004

Marjorie Mesidor, Esq.
PHILLIPS & ASSOCIATES
45 Broadway, Suite 620
New York, NY 10006

Enclosure with EEOC
Form 161-B (11/16)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.
If you also plan to sue claiming violations of State law, please be aware that time limits and other provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*